IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SHELLEY A. CROOK,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

Civil No. 1:14-cv-01021-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

    Plaintiff Shelley A. Crook filed this action June 24, 2014, seeking judicial review of the Commissioner of Social Security's final decision denying her application for Supplemental Security Income under Title XVI of the Social Security Act. This court has jurisdiction over plaintiff's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Page 1 - OPINION AND ORDER

Crook argues that the Appeals Council erred by erroneously failing to make part of the administrative record evidence submitted by Plaintiff on July 10, 2013. In addition, Crook contends the ALJ erred by rejecting her testimony regarding the extent of her impairments, and, failing to give proper weight to medical and lay witness evidence, the ALJ failed properly to assess her residual functional capacity after completing step three of the five-step sequential process for analyzing a Social Security claimant's entitlement to benefits, and for those reasons erred by finding Crook capable of performing work at step five of the process.

I have considered the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's decision is affirmed and this matter is dismissed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ

finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*, *quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). If the claimant's impairments are equivalent to one of the impairments enumerated

Page 3 - OPINION AND ORDER

in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 404.1520(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 404.1545(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(a)(4)(iv), 404.1520(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404,1520(g), 404.1560(c), 404.1566. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id., quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence

of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD[2]

Crook was 45 years old on her alleged onset date of December 18, 2006. Tr. 177.[3] She completed the eleventh grade, earned a GED, and completed some college work. Tr. 41, 313. According to the evidence of record, prior to her claimed disability onset date Crook had worked for two months as a cook. Tr. 41. She stopped working in December 2005 after eye surgery. Tr. 41, 181. Crook alleges she cannot work due to "uveitis in right eye, loss of peripheral vision right eye, glaucoma right eye, bipolar disorder, depression, loss of left eye, hypothyroidism, diabetes II, hypertension, loss of peripheral vision left eye." Tr. 180.

### I. The Medical Record

The parties are familiar with the extensive medical record. Therefore, it will be set out herein only as necessary.

### II. The Hearing Testimony

On October 4, 2012, a hearing was conducted before an ALJ in connection with Crook's application, and was continued to allow Crook to obtain additional medical records. Tr. 65-71.

---

[2] The following recitation constitutes a summary of the evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 14.

The hearing resumed on January 3, 2013. Tr. 35-64. Crook, her counsel, and a vocational expert were present. Tr. 35.

Crook testified that she was 51 years old, and left school in eleventh grade because "I just felt like I wanted to get away from my responsibility and just wanted to go out on my own." Tr. 40-41. She last worked for two months as a prep cook in 2005. The job only lasted for two months because "I had a detached retina in my left eye. And I lost the eye. So I had to go have surgery, and I had to quit. I could no longer work." *Id.* She has not looked for work since her surgery because "I had problems with mental problems." *Id.* Her mental problems existed before she had the prep cook job, and did not prevent her from working. The prep cook job is the only job Crook has had. She supported herself and her children on public assistance. Tr. 42.

Crook was taking medications, but could not remember the names. Her medications included Paxil, precozine, methylprednisolone, metoprolol, glipizide, theoden, depakote, oncostatin, and Lopiden. Tr. 43. She did not have side effects from the medications, but testified the psychosis medication was not effective because she "hear[s] voices all the time. And I hear things. And I have trouble concentrating because my mind is always racing all the time. And I just don't concentrate very well." Tr. 44. She sees Dan McDonnell, PM.HNP for counseling. She does not use marijuana, alcohol, or amphetamines.

Crook testified that she cannot see well enough to read. Tr. 45. She had uveitis flare ups in her right eye "a couple different times" in the past year. Tr. 46. The flare can last a day or so. Tr. 47. She gets low back pain "every couple of days," that lasts up to an hour and for which she takes Tylenol. Tr. 48.

Crook stated she is afraid to be around groups of people, and has to leave the store if there are a lot of people there. Tr. 48-49. She hears voices that keep her from concentrating. Tr. 49. She does not complete household tasks because she will "forget what I'm doing. . . or my mind will be racing so much that it helps me get really confused." *Id.* She does not drive because she cannot see well enough. Tr. 50. Her sleep fluctuates between six and twelve hours, and she naps every day for a couple of hours "[b]ecause I just am tired, and I get real worn out. And sometimes I'm resting my eye because my eye hurts." Tr. 51. She does not regularly see friends or relatives. Her 30 year old daughter lives with her and drives her. She also has two sons living with her. She receives $1,000 per month from her ex-husband and food stamps. Tr. 52.

Asked whether she could do a simple task, with no public contact, Crook said no, "[b]ecause my mind just won't let me concentrate long enough on anything." Tr. 55. Her children did the cooking for the past year. Her daughter did the grocery shopping and laundry for the past year. Tr. 56. Her ex-husband comes over about twice a week when she has "a mental breakdown." Tr. 58. He drives her sometimes and is active in his sons' lives. Crook was asked to cook Thanksgiving dinner but did not because "I felt stressed and I was just under a lot of stress and pressure. And I didn't." Tr. 59. Crook testified her symptoms would have caused her to miss work "every day" if she had a full time job in the prior month. *Id.* She has trouble attending her appointments, and said she cancels them or does not show up for them.

### ALJ FINDINGS

The ALJ applied the sequential disability determination process described above. At step one, the ALJ found Crook has not engaged in substantial gainful activity since the application date of May 19, 2010. Tr. 23.

At step two, the ALJ found Crook had the severe impairments of left eye blindness; right eye chronic uveitis and acute close angle glaucoma; bipolar disorder; adjustment disorder, mixed; stage three renal disease; and diabetes. *Id.*

At step three, the ALJ concluded that Crook's impairments do not meet or equal the criteria for any condition in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* The ALJ found that Crook had the RFC to perform light work, except she must avoid workplace hazards such as unprotected heights and dangerous machinery due to impaired depth perception. She must avoid tasks that require excellent depth perception. She must avoid tasks that involve reading fine print smaller than ordinary newsprint. She can understand and carry out simple instructions. She can tolerate occasional interaction with workers, but must otherwise avoid teamwork assignments or interaction with the general public. Tr. 25.

At step four, the ALJ concluded Crook was unable to perform any past relevant work. Tr. 28. However, at step five, the ALJ found jobs exist in significant numbers in the national economy that Crook can perform, including stuffer, rug cleaner, and night cleaner. Tr. 29. As a result, the ALJ concluded Crook has not been disabled from May 19, 2010, through the date of his decision. *Id.*

## DISCUSSION

### I. New Evidence Submitted to the Appeals Council

On July 10, 2013, seven months after the ALJ issued his decision, Crook submitted additional, new evidence to the Appeals Council in connection with her Request for Review. This evidence is not in the record, but was appended to Crooks' submission to the court. It

includes a Psychodiagnostic Testing and Evaluation by Douglas A. Col, Ph.D., conducted on March 22, 2013. Dr. Col did not examine Crook during the period under review.

The Appeals Council declined to reverse the ALJ's decision. Tr. 1-4. In doing so, the Appeals Council declined to consider the evidence created after the ALJ's decision because it did not relate to the period under review by the ALJ. Tr. 2. This court does not have jurisdiction to review the action of the Appeals Council because it was not a final decision of the agency. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012), *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

Crook's reliance on *Brewes* is misplaced. That case holds that the district court must review the ALJ's decision based on the record as a whole, including evidence produced after the ALJ's decision that was considered by the Appeals Council and made part of the administrative record. *Brewes*, 682 F.3d at 1162. Here the Appeals Council did not consider the additional evidence or make it part of the administrative record. Accordingly, it is not properly before this court in this appeal. *See also Barrington v. Colvin*, 2014 WL 5342371 (D. Or. 2014).

## II. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be

Page 10 - OPINION AND ORDER

substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

The ALJ found Crook less than fully credible as to her limitations arising from her symptoms. Tr. 26. The ALJ noted that Crook stated her mental impairments had been present for a long period of time but did not prevent her from working in the past. Tr. 26. An ALJ may rely on the fact that an impairment has been present for a period of time but did not preclude a claimant from functioning at a higher level than alleged. *Gregory v. Bowen,* 844 F.2d 664, 667 (9th Cir. 1988). The fact that a claimant stopped working for reasons unrelated to the problem she reported as disabling is also a valid reason to find a claimant not fully credible. *Tommasetti v. Astrue,* 553 F.3d 1035, 1040 (9th Cir. 2008). The ALJ noted that Crook testified that she stopped working because she had eye surgery, not because she could not concentrate. Tr. 26. The ALJ stated that Crook's inability to concentrate well enough to perform simple household duties was inconsistent with her assertion that she could handle her finances. Tr. 27. The ALJ also noted Crooks' extremely limited work record raised questions about her motivation. *Id.* The Ninth Circuit recognizes that an ALJ may consider a claimant's work history. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

On this record, the ALJ's determination regarding credibility is supported by substantial evidence.

### III. Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

On January 2, 2013, John Crook completed an Affidavit. In it, he stated that Shelley Crook is his ex-wife and the mother of his two sons. Tr. 227. Mr. Crook states he sees Crook "every one to two weeks, and more often during a crisis, such as a mental breakdown, eye surgeries, and serious eye flare ups." *Id.* Mr. Crook said he has seen Crook have trouble concentrating and she tells him her mind is racing and she hears voices. He has seen her unable to finish simple tasks like cooking, laundry, and cleaning.

Mr. Crook provides $1,000 per month to Crook though he is no longer legally responsible for child support because he believes her health problems prevent her from working. These payments would stop if Crook were awarded disability. Tr. 53. Crook complains of eye pain during flare ups, which occur as often as one week per month. Tr. 228.

The ALJ considered these statements and afforded them limited weight. Tr. 28. The ALJ noted the degree of limitation Mr. Crook described was inconsistent with the medical record, which indicated Crook's memory was unimpaired and her concentration mildly impaired. *Id.,* 650, 315. Inconsistency with the medical record is a germane reason to afford a lay witness testimony little weight. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1161 (9th Cir. 2008).

The ALJ's treatment of the lay witness is supported by substantial evidence.

## IV. Residual Functional Capacity

The ALJ must determine whether a claimant's impairment meets or equals an impairment listed in "The Listing of Impairments" (The Listings). *See* 20 C.F.R. Part 404, Subpt. P, App. 1. The Listings describe specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). Most of these impairments are "permanent or expected to result in death." *Id.* "For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.

The Listings describe the "symptoms, signs, and laboratory findings" that make up the characteristics of each listed impairment. *See* 20 C.F.R. §§ 404.1525(c), 416.925(c). To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *See* 20 C.F.R. §§ 404.1525, 416.925. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's

Page 13 - OPINION AND ORDER

impairment is not listed, then to the listed impairment "most like" the claimant's impairment. *See* 20 C.F.R. §§ 404.1525(a), 416.926(a).

Crook argues she meets Listing 2.02 "Loss of Central Visual Field Acuity." 20 C.F.R. pt. 404 subpt. P, Appx. 1 § 2.02. To meet this Listing Crook must demonstrate her "[r]emaining vision in the better eye after correction is 20/200 or less." However, at the January 2013 hearing, Crook agreed that her corrected vision was 20/80. Tr. 45. In July 2012 her corrected visual acuity was 20/60. Tr. 585. Crook has not met her burden of providing medical evidence indicating that she met the requirements of the Listing.

Crook argues the ALJ erred by failing to order a vision examination, citing the July 2010 report from consulting examiner Derrick J. Soweide, D.O., in which Dr. Soweide opined that an eye doctor should determine Crook's level of vision impairment. Tr. 310. In December 2011, Douglas R. Merritt, M.D., of Cascade Eye Care Center P.C. submitted a note in which he asserts Crook's visual acuity is 20/50, and she has difficulty seeing fine print and tasks requiring stereo vision. Tr. 555. Dr. Merritt conducted a complete eye examination in July 2012. Tr. 584-86. The ALJ accounted for the limitations regarding fine print and stereo vision in Crook's RFC. Tr. 25.

Crook contends the ALJ erred by failing to develop the record because two pages of medical records from Renal Care Consultants appear to be missing. This argument fails because Crook does not identify any functional limitations arising from kidney disease. Crook testified that she has low back pain "every couple of days" that lasts an hour and is controlled by Tylenol. Tr. 48. On this record, the ALJ did not err by failing to develop the record.

Crook argues the ALJ erred by giving "significant weight" to Thomas Brent Shields, Ph.D. Tr. 27. Dr. Shields examined Crook in August 2010. Tr. 311-16. He found Crook mildly impaired in concentration, and capable of understanding, remembering, and carrying out simple instructions. Tr. 315. Dr. Shields opined Crook "may not do well in high pressured situations that require frequent interaction with others." *Id.* He found her ability to sustain persistence and pace mildly impaired due to mood-spectrum symptoms and poor frustration tolerance.

Crook argues that Dr. Shields opinions are outweighed by the opinion of Dr. Col. However, as set out above, Dr. Col's opinion is not in this administrative record. The ALJ did not err in weighing Dr. Shields' opinion.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is affirmed and this matter is dismissed with prejudice.

IT IS SO ORDERED.

DATED this 12th day of February, 2016.

Honorable Paul Papak
United States Magistrate Judge